UNITED STATES v. CERTAIN LANDS.

(District Court, D. New Hampshire. September 25, 1913.)

No. 71, Law.

EMINENT DOMAIN (§ 4*)—RIGHTS OF STATE—NATIONAL FOREST RESERVATION—ESTOPPEL BY GRANT.

Where the Legislature of a state by joint resolution approved by the Governor conferred on the United States the right to acquire land within the state for a forest reserve, reserving only the right to execute civil and criminal process therein, and the United States, acting in reliance thereon, purchased such lands, the state is estopped to assert the further right to exercise or grant the power of eminent domain over such lands.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 14-18; Dec. Dig. § 4.*]

Condemnation proceedings by the United States against certain lands. Judgment for plaintiff.

C. W. Hoitt, U. S. Atty., of Nashua, N. H.

James P. Tuttle, Atty. Gen., for State of New Hampshire.

ALDRICH, District Judge. In this case it is stipulated that issues of fact shall be determined by me, and right of trial by jury, if it exists, is waived.

This is a proceeding by the United States for the condemnation of certain lands in the state of New Hampshire, to the end that the United States, through notice of its proceeding, and such hearings as may become necessary, may be made secure in its title. It is understood that

this proceeding is supplementary to certain conveyances and grants from individuals holding title; the object being to make the United States secure as against all parties who may claim to have an interest in the territory covered by the conveyances and grants.

The state of New Hampshire disclaims all right in fee, but asserts its "power to exercise and grant the right of eminent domain in the laying out of highways and in the taking of gravel banks and other necessary material for building and maintaining such public highways within said territory."

In acquiring the lands in question the United States was acting for the purpose of creating a national forest reserve for the protection of watersheds of navigable streams; conserving the navigability of navigable rivers; and for other incidental and reasonable public uses.

In 1903 the Legislature of New Hampshire passed a joint resolution (Laws 1903, c. 137) favoring the establishment of a national forest reserve in the White Mountain region, which was approved by the executive. Through this resolution the state undertook to confer upon Congress certain powers in respect to the interests of the state of New Hampshire, and its only reservation was that the state should retain jurisdiction concurrent with the United States with respect to civil and criminal process, to be exercised in the same manner as if the joint resolution had not been passed. In addition to this grant of power to the federal government, and for the purpose of promoting national legislation, the Senators and Representatives in Congress were requested to urge prompt and favorable action.

In 1905 (Laws 1905, c. 122), while a bill was pending before Congress, which sought to provide for the acquirement of land in the White Mountain region by the United States for a national forest reserve, the Legislature of New Hampshire approved and ratified the joint resolution of 1903, and again called upon Senators and Representatives in Congress to favor the proposed legislation, and this resolution also received state executive sanction.

The answer of the state of New Hampshire seeks to enlarge its reservation and now stand upon its right to exercise eminent domain in certain respects, viz., to reserve to itself the right to lay out highways and take gravel banks for building and maintaining highways.

It can be readily seen that the exercise of such a right by the state might interfere with the purpose for which the national reserve is sought to be established, and it is quite apparent from the pleadings, and especially from the allegations of the replication, which were not traversed, that the federal government proceeded in reliance upon the state joint resolutions, to which reference has been made.

There is no contention made that the Legislature and the executive in 1903 and 1905 exceeded their proper powers in the action taken for the purpose of promoting federal legislation upon the subject of a national reservation in the White Mountains.

So far as it is a question of fact, I find that the state of New Hampshire waived all its rights within the territory in question, except the right to serve civil process in all cases, and such criminal process as might issue under the authority of the state against any persons charg-

ed with the commission of crime, to be executed as though the joint resolution had not been passed.

I also find that such relinquishment or waiver having been made, the state of New Hampshire is estopped from setting up any of its reserved rights other than the one expressly reserved in the joint resolution of 1903.

So far as it is a question of law, I hold and rule that the state waived all dominion over the territory in question, except that in respect to civil and criminal matters, the only right of dominion which it sought to retain.